335 A.2d 623 (1975)
Clifton L. TATRO, Plaintiff,
v.
Katheryn ESHAM et al., Defendants.
Superior Court of Delaware, Sussex.
March 6, 1975.
*625 H. Clay Davis, III, Georgetown, for plaintiff.
John E. Messick, of Tunnell & Raysor, Georgetown, for defendants.

OPINION
CHRISTIE, Judge.
Defendants have moved to dismiss the complaint on the ground that the plaintiff has failed to state a claim upon which relief can be granted. In the alternative, defendants request a more definite statement of the facts supporting the complaint.
Plaintiff is a high school principal in the Woodbridge School District. Defendants are members of the community serviced by the Woodbridge School District.
Plaintiff alleges that the defendants, acting in concert, maliciously published material that was defamatory of plaintiff in that it tended to damage his reputation as an educator. The alleged intendment of the defamatory matter was to force the plaintiff to resign or to obtain his removal by the Board of Education of the Woodbridge School District ("Board").
The words which are alleged to be defamatory were contained in a pamphlet which was alleged to have been published in various ways including the reading thereof aloud before a public meeting of the School Board.

I.
In considering a motion to dismiss for failure to state a claim upon which relief can be granted, the Courts will treat the allegations of the complaint as true for the purposes of the motion. Atlas Subsidiaries of Delaware, Inc. v. Burns, Del.Supr., 202 A.2d 566 (1964). Every reasonable inference will be drawn that favors the non-moving party. Fine v. Mayor and Council of Wilmington, 8 Terry 539, 94 A.2d 393 (Del.Supr., 1953). However, in this case the parties rely on facts which are in the record, but are not spelled out in the complaint. Under the circumstances, the motion will be treated as a motion for summary judgment.
Usually any publication of materials which may be reasonably understood to be defamatory of another's reputation or character is done at the risk of liability. Under such circumstances, liability is generally found to exist. Peck v. Tribune Co., 214 U.S. 185, 29 S.Ct. 554, 53 L.Ed. 960 (1909); Corrigan v. Bobbs-Merrill Co., 228 N.Y. 58, 126 N.E. 260, 10 A.L.R. 662 (1920). Prosser on Torts, § 113, p. 773 (4th Ed. 1971).
Exceptions to the rule of strict liability for defamation have, however, been carved out to accommodate certain situations where the Courts have found that public interest mandates more complete *626 freedom of expression. Prosser on Torts, § 114, p. 777. The English authorities adher to a rule that judges, counsel, parties and witnesses to an action will be absolutely exempt from liability stemming from any alleged defamations made in the course of judicial proceedings. Floyd and Barker, 12 Co.Rep. 23 (1608); Dawkins v. Lord Paulet, L.R. 5 Q.B. 94 (1869). See Veeder, Absolute Immunity in Defamation: Judicial Proceedings, 9 Col.L.Rev. 463 (1909). The American courts have adopted a corresponding doctrine with qualifications. The matter alleged to be defamatory must at least be pertinent and material to the action. Randall v. Brigham, 7 Wall. 523, 19 L.Ed. 285 (1868); Bradley v. Fisher, 13 Wall. 335, 20 L.Ed. 646 (1871); Goslin v. Cannon, Del., 1 Har. 3 (1832); Eccles v. Shannon, Del., 4 Har. 193 (1844); Short v. News-Journal Co., Del.Super., 205 A.2d 6 (1965). Prosser on Torts, § 114, p. 777.
American courts have also held that matters presented at certain administrative hearings where the hearings afford substantive fairness through regular and orderly procedure are entitled to absolute immunity from civil liability. Rainier's Dairies v. Rariton Valley Farms, 19 N.J. 552, 117 A.2d 889 (1955); Stafney v. Standard Oil Co., 71 N.D. 170, 299 N.W. 582, 136 A.L.R. 535 (1941); Shortz v. Farrell, 327 Pa. 81, 193 A. 20 (1937); White v. United Mills Co., Inc., 240 Mo.App. 443, 208 S.W.2d 803 (K.C. Ct. of Ap.1948). The focus of the inquiry in such cases has been to determine whether the traditional safeguards attending the judicial process are afforded. Significant factors are: formal requirements of hearing and notice; compulsory attendance and discovery processes; authority to take sworn testimony and punish perjury; and, review through appeal procedures. Rainier's Dairies v. Raritan Valley Farms, supra.
Defendants argue that the Woodbridge School Board is authorized by statute to decide specified controversies and that safeguards as to its proceedings are provided by the following provisions:
1) 14 Del.C. § 1043 provides that the School Board has "the authority to determine policy and adopt rules and regulations for the general administration and supervision of the ... school district."; 2) 14 Del.C. § 1058 provides that "The school board ... shall decide on all controversies involving the rules and regulations of the school board." Appeal is provided to the State Board of Education; 3) 14 Del.C. § 1059 provides that the "school board may administer oaths, examine persons under oath ..." and, 4) 14 Del.C. § 1060 provides a penalty for giving false testimony before a School Board. It may also be noted that the plaintiff's contract provides that the Board may remove the plaintiff only "for good and just causes provided that the Board does not arbitrarily call for his dismissal..." and plaintiff must be served "with a written performance evaluation and (receive) a fair hearing before the Board." See 14 Del.C. § 747.
Plaintiff claims that the characterization of the School Board as a quasi-judicial body is of no moment since it was not acting as such at the time the defamations are alleged to have taken place in this case. He points out that no adequate complaint had been filed and that no hearing had been scheduled. Plaintiff's argument, if well-taken, would render the issue of the character of the tribunal moot. Therefore, for the purposes of determining the merits of plaintiff's contention, the School Board may be assumed to have constituted a quasi-judicial body. See White v. Holderby, 192 F.2d 722 (5 Cir. 1951).
Plaintiff alleges that the president of the School Board announced prior to the publication of the defamation that the Board would not consider anonymous charges. Nevertheless, none of the defendants came forward to authenticate the declaration of charges. In fact, the defendant who read *627 the charges to the Board in public expressly denied authorship.
It is clear that no specific formal procedure existed at the time of the School Board meeting which would allow a concerned member of the community to initiate Board proceedings of his own volition. The announcement of the Board's president may well have invited "informal" complaints, but none were forthcoming. The defendants did not comply with the invitation of that announcement. Rather, they apparently chose to continue to press their charges as a community organization composed of anonymous individuals. The recognizable and reasonable requisites of a fair "informal" complaint procedure should have been adhered to if the defendants were seeking to invoke the judicial processes of the School Board. See Sowder v. Nolan, 125 A.2d 52 (D.C.Mun.App. 1956). Instead, they went outside the judicial framework and sought to rally support by dissemination of an anonymous message.
The Board did not seek a hearing on its own motion nor did any concerned citizens comply with the "informal" complaint process which has since become formalized. Under the circumstances here present, it is clear that no judicial proceedings were ever commenced. See Di Blasio v. Kolodner, 233 Md. 512, 197 A.2d 245 (1964).
Few courts have considered defamations made prior to the possible commencement of judicial proceedings. It is clear, however, that the crucial test is whether the occasion and/or public office are deserving of privilege. 50 Am.Jur.2d, Libel and Slander, § 194, p. 696.
The underlying principal upon which the doctrine of privilege is founded is public policy. Bacon v. Michigan Central Railroad Co., 66 Mich. 166, 33 N.W. 181 (1887).
However, absolute immunity is restricted to narrow and sharply defined limits and will be extended only in clear instances where the purposes underlying the privilege are satisfied. McClendon v. Coverdale, Del.Super., 203 A.2d 815 (1964).
Relaxation of the traditional safeguards of liability for defamation is necessary in some instances for events taking place outside the courtroom when they are an integral part of the judicial process, e. g., conversations between witnesses and counsel, the drafting of pleadings, and the taking of depositions or affidavits ex parte. See Middlesex Concrete, etc. v. Carteret Industrial Ass'n, 68 N.J.Super. 85, 172 A.2d 22 (App.Div.1961); Taliaferro v. Sims, 187 F.2d 6 (5 Cir. 1951).
Where, however, the judicial proceedings are not such as to require risk of the publication of statements which may be defamatory, no privilege attaches. Timmis v. Bennett, 352 Mich. 355, 89 N.W.2d 748 (1958); Cheatum v. Wehle, 5 N.Y.2d 585, 186 N.Y.S.2d 606, 159 N.E.2d 166 (1959).
No authority being dispositive of the case at bar, the circumstances must be examined in light of the policy to be served in applying the privilege.
Absolute freedom to publish defamatory accusations prior to the filing of a suit could lead to abuses which a fair society should not tolerate. Indeed almost any defamation might be defended on the basis that suit was anticipated. It is an important incident of the judicial process that an impartial tribunal is interposed between the litigants to supervise and control the essential fairness of the proceedings. The power of the State and restraining influence of a judge allows the court to expunge statements exceeding proper bounds and to censure and punish for contempt or perjury. See Mills v. Denny, 245 Iowa 584, 63 N. W.2d 222 (1954). The law also deals with those bringing false charges.
I find that the purposes of the sound administration of justice would not be served by applying an absolute privilege to the anonymous communications which *628 were made under the circumstances outlined in the case at bar. The possibility of an eventual judicial or administrative hearing cannot be used to avoid liability for defamation if in fact defamation took place in this case.

II.
The defendants also request a more definite statement of the facts and charges brought against them by plaintiff's complaint. Defendants say that the complaint is "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." In support of this motion, the defendants put forward two arguments:
1) Defendants assert that the plaintiff has failed to set forth the precise nature and cause of his action, namely, whether it is based on libel or slander.
The defendants contend that they would be prejudiced if they were required to respond due to the significant differences that separate libel from slander. Preliminarily, it should be noted that it is well-settled that the publication of a libel may be the joint act of two or more persons who may, in such a case, be sued either jointly or separately at the election of the plaintiff. Munson v. Lathrop, 96 Wis. 386, 71 N.W. 596 (1897). Slander, on the other hand, is usually regarded as an individual or separate tort incapable of joint commission. 50 Am.Jur.2d, Libel and Slander, § 348, p. 867.
The complaint clearly alleges that the defendants acted in concert toward a common end. The reasonable inference is that the plaintiff has elected to pursue a joint tort sounding in libel. Defendants should respond accordingly.
2) The defendants assert that the complaint lacks certainty and clarity because it fails to state with particularity the connection existing between the individual defendants which would tend to show a concerted effort.
The complaint alleges generally that the defendants acted in concert to publish a common document, the pamphlet, toward the common aim of ousting the plaintiff from his position and defaming his reputation as a professional educator.
The detailed allegations of the complaint set forth acts of specific individuals by which each is claimed to have published the pamphlet, but no specific facts supporting the conspiracy theory are set forth. These, however, are matters which may be explored by appropriate discovery.
The motions to dismiss the complaint and for a more definite statement are denied. It is so ordered.